Thomas A. Guida (TG-3600)
Barry I. Slotnick (BS-9796)
LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154-1895
Tele: (212) 407-4000

Attorneys for Plaintiff
FremantleMedia North America, Inc.

JUDGE JONES

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

07 CV 7519

FREMANTLEMEDIA NORTH AMERICA,  :
INC. ,

                 Plaintiff,                :

                v.                          :

MARINE M. GOSS D/B/A                :
ANGELIC GENIUS and ROSEANNE
YARUSI D/B/A THE ROSE GARDEN ,     :

            Defendants.

------------------------------------------------------- X

Index No.

**COMPLAINT**

AUG 24 2007

      Plaintiff FremantleMedia North America, Inc. ("FremantleMedia"), by and through its

attorneys, Loeb & Loeb LLP, for its complaint against defendants Marine M. Goss d/b/a Angelic

Genius ("AG") and Roseanne Yarusi d/b/a The Rose Garden ("Rose Garden")(AG and Rose

Garden collectively, the "Defendants"), alleges and avers as follows:

## INTRODUCTORY STATEMENT

      1.      This action arises from the Defendants' calculated efforts to unjustly benefit from

the popularity of AMERICAN IDOL, one of the most popular television programs of all time.

Despite having no authorization whatsoever to do so, upon information and belief the Defendants

design and sell adult and children's clothing that is nothing more than a shameless rip-off of

FremantleMedia's valuable trademarks and trade dress.

2.      FremantleMedia, along with its partner 19 TV Ltd. ("19") is the producer of "AMERICAN IDOL," a televised musical talent competition that routinely draws over 30 million viewers per episode during its season. AMERICAN IDOL has become synonymous with great television and an unavoidable presence in American popular culture. For example, during several weeks during the Summer of 2007, at least three of the top 20 songs on the popular music charts were sung by former AMERICAN IDOL contestants. AMERICAN IDOL may be the most powerful and iconic brand in television and popular music today.

3.      The AMERICAN IDOL word mark, the distinctive oval AMERICAN IDOL logo (the "AMERICAN IDOL Logo", a true and correct copy of which is attached as Exhibit A hereto), the entire family of registered and unregistered AMERICAN IDOL-related marks, including compound marks where "Idol" is the dominant element (collectively with the AMERICAN IDOL word mark and the AMERICAN IDOL Logo, the "AMERICAN IDOL Trademarks") and the trade dress of that logo and items featuring these marks (the "AMERICAN IDOL Trade Dress"), are each famous and distinctive in their own right, and Fremantle has built a highly successful program to license those trademarks and trade dress to third parties across a wide swath of products and services.

4.      FremantleMedia recently learned that Defendant Angelic Genius was designing, marketing and selling, on its own or through distributors such as Rose Garden, children's and adult t-shirts and other garments (the "Adorable Idol Shirts" or "Infringing Shirts") that prominently feature an oval "Adorable Idol" logo (the "Infringing Logo") that is virtually identical to the shape, color, and scripted font of the authentic AMERICAN IDOL Logo.

5.      The Infringing Shirts are available, through the efforts of the Defendants, in major department stores such as Bloomingdales, Lord & Taylor, and Nordstroms, specialty clothing

boutiques, other retail outlets and through third party websites. AG also operates a website on which it publicizes and sells its clothing line, which is accessible at the URL <http://www.angelicgenius.com> (the "AG Website").

6.      The Infringing Shirts use the Infringing Logo, as can be seen in the photograph of an Infringing Shirt attached as <u>Exhibit B</u> hereto, in a manner upon information and belief that can only have been a knowing, willful attempt to create the false impression that AG and Yarusi were authorized to sell licensed goods by FremantleMedia, and that such articles were sponsored by, created and distributed with the permission of FremantleMedia. This appears to be nothing more than a brazen attempt to utilize the tremendous goodwill of AMERICAN IDOL and its trademarks for the Defendants' own financial benefit.

7.      Upon information and belief, the Defendants' creation, design, distribution and sale of the Infringing Shirts has damaged FremantleMedia by causing significant confusion in the marketplace, diluting and trading on the goodwill of the AMERICAN IDOL Trademarks, and using deceptive and misleading trade practices. FremantleMedia seeks redress from the Defendants as set forth below.

## **PARTIES**

8.      Plaintiff FremantleMedia North America, Inc. is a corporation organized and existing under the laws of the State of Delaware, authorized to conduct business in the State of New York, that maintains a principal place of business at 28 East 28th Street, New York, New York 10016.

9.      Upon information and belief Defendant Marine M. Goss carries on her proprietary clothing design and sales business activities under the fictitious business name "Angelic Genius" pursuant to Fictitious Business Name Statement No. 1158780 filed with the County of Los

Angeles on May 7, 2004, maintains an office for such business at 375 Huntley Drive, West Hollywood, California, and conducts substantial and continuing business operations within, or that are directed to, the State and City of New York.

10.    Upon information and belief, Defendant Roseanne Yarusi carries on her proprietary business activities under the fictitious business name "The Rose Garden," maintains a principal place of operations for such business at 131 West 33rd Street, Suite 803, New York, New York and conducts substantial and continuing business operations within, or that are directed to, the State and City of New York. The Rose Garden is, upon information and belief, a wholesale children's clothing distributor and the exclusive authorized distributor of the Infringing Shirts in the New York tri-state area that has sold the Infringing Shirts to retailers throughout that area, including several major retailers in Manhattan and on Long Island.

## JURISDICTION

11.    This Court has original subject-matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and 1338(b) because this action involves substantial claims arising under the United States Trademark Act of 1946, as amended, 15 U.S.C. 1051, *et seq.*, including claims arising from the alleged infringement of, unfair competition with, and dilution of federally registered and unregistered trademarks. This Court also has supplemental jurisdiction over related claims of alleged infringement of common law rights in trademarks, unfair competition, injury to business reputation, deceptive trade practices in violation of the statutory and common laws of the State of New York pursuant to 28 U.S.C. §§ 1338(b), 1367 and the doctrine of supplemental jurisdiction, because such state law claims are so related to the claims within the Court's original jurisdiction that they form part of the same case and controversy.

## VENUE

12.     Venue for this action is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this district.

## RECITATION OF FACTS

*FremantleMedia's Television Programming and Merchandise*

13.     FremantleMedia is in the business of creating, producing and distributing original and archival television programs, the licensing of television program formats, and the licensing of its trademarks to third parties for use on, or in association with, a variety of authorized products and services.

14.     More specifically, FremantleMedia is the producer, with its partner 19, of the television show AMERICAN IDOL, one of the most successful programs in American television history.

15.     In connection with its production and marketing of AMERICAN IDOL, FremantleMedia has made significant use of the AMERICAN IDOL Trademarks throughout the United States and the world, and developed a sophisticated program to license the AMERICAN IDOL Trademarks for use in association with approved products and services.

16.     Over the years, FremantleMedia has spent millions of dollars advertising and promoting the AMERICAN IDOL television program and licensed products, as a result of which tremendous goodwill has accrued to the AMERICAN IDOL Trademarks.

17.     Fremantle licensing staff spend a tremendous amount of time enforcing the consistent use of the AMERICAN IDOL Trademarks and a consistent brand image for Fremantle-provided and licensee products, which includes significant efforts to ensure that the

scripted font, shape colors (primary brand colors of dark blue, navy blue, cyan and white, with the secondary brand color magenta) and other creative elements of the AMERICAN IDOL Trade Dress (as embodied within the AMERICAN IDOL Logo or otherwise) always look the same no matter what the context. This consistency has created reliance among the consuming public that every product and service that bears such logo and trade dress is an authentic, authorized product.

18.    The AMERICAN IDOL television program, the AMERICAN IDOL Trademarks, and FremantleMedia's and its licensees' related goods and services sold under those marks have generated substantial revenue annually for FremantleMedia, 19, the Fox Broadcasting Company ("Fox") which has broadcast AMERICAN IDOL since its premiere, and those licensees, including licensed products and services that generate millions of dollars of retail sales from residents of New York State.

19.    Since the first season of AMERICAN IDOL in 2002, Fox has maintained a website (the "Official AMERICAN IDOL Website") that can be accessed at the Internet address www.americanidol.com.

20.    The Official AMERICAN IDOL Website is the exclusive "official" AMERICAN IDOL website, and in addition to news, information, and audiovisual content about AMERICAN IDOL and its contestants, also features an "Idol Store" on which authorized AMERICAN IDOL merchandise, including children's and baby apparel, is offered for sale.

21.    Fremantle's licensee, JEM Sportswear Inc, has been licensed since 2004 to manufacture and sell AMERICAN IDOL apparel, including infant wear and T-shirts, tops and sweatshirts for men, women, juniors, boys and girls. FremantleMedia has also publicly announced that it has entered into licensing agreements with two other apparel designers who

will begin selling AMERICAN IDOL apparel of the same nature as those sold by the Defendants, in the Spring of 2008.

*The AMERICAN IDOL Family of Marks*

22.    In recognition of FremantleMedia's exclusive ownership of, and rights in, the AMERICAN IDOL word mark and the AMERICAN IDOL Logo for use in commerce as early as August 30, 2002 in connection with the sale of apparel, the United States Trademark Office has granted FremantleMedia the following federal trademark registrations:

(a)    U.S. Trademark Reg. No. 3,142,771 for the **AMERICAN IDOL Logo** (issued June 12, 2006) for clothing, namely, rainwear, T-shirts, sweat shirts, jerseys, shorts, sweat pants, jackets, hats, caps, scarves, pajamas, night shirts, night gowns, underwear, head bands, wrist bands, skirts, shirts, tank tops, pants, coats, sweaters and headwear, namely, hats and caps. (collectively, with Reg. Nos. 2,715,725, 2,955,077, 3,062,247 and 3,146,138 listed below, the "AMERICAN IDOL Logo Trademarks").

(b)    U.S. Trademark Reg. No. 3,101,422 for the mark **AMERICAN IDOL** (issued June 6, 2006) for clothing, namely, rainwear, T-shirts, sweat shirts, jerseys, shorts, sweat pants, jackets, hats, caps, scarves, [gloves, hosiery, neckties,] pajamas,[ robes,] night shirts, night gowns, underwear, head bands, wrist bands, [swim suits,] skirts, shirts, tank tops, pants, coats, sweaters, [leotards, leg warmers, stockings, socks, panty hose, tights,] belts; [footwear, namely, shoes, athletic shoes, slippers, boots, sandals;] and headwear, namely, hats and caps (collectively, with Reg. Nos. 2,751,431, 2,863,808, 2,951,733, 2,959,920, 3,037,638, 3,064,528, 3,204,113, 3,257,662, 3,114,786, and 3,181,455 listed below, the "AMERICAN IDOL Word Marks").

23.    In recognition of FremantleMedia's exclusive ownership of, and rights in, the AMERICAN IDOL Logo, the United States Trademark Office has also granted FremantleMedia the following federal trademark registration:

(a)    U.S. Trademark Reg. No. 3,142,771 for the **AMERICAN IDOL Logo** (issued June 12, 2006) for (in addition to the goods noted in paragraph 22, above) posters, calendars, notebooks, binders, daily organizers, memopads, stickers, playing cards, writing paper, envelopes, greeting cards, paper coasters, paper mats, books and magazines in the field of talent shows, photographs, postcards, trading cards, prepaid phone debit cards without magnetic coding; board games and card games, dolls, doll playsets, toy vehicles, toy cards, musical toys, toy figurines, toy

balloon").

(b)    U.S. Trademark Reg. No. 2,715,725 for the **AMERICAN IDOL Logo** (issued May 13, 2003) for entertainment services in the nature of a continuing television talent show.

(c)    U.S. Trademark Reg. No. 2,955,077 for the **AMERICAN IDOL Logo** (issued May 24, 2005) for entertainment services in the nature of sweepstakes.

(d)    U.S. Trademark Reg. No. 3,062,247 for the **AMERICAN IDOL Logo** (issued February 28, 2006) for wireless telephone services and digital cameras.

(e)    U.S. Trademark Reg. No. 3,146,138 for the **AMERICAN IDOL Logo** (issued September 19, 2006) for after-shave lotions; body cream and sprays; cosmetic pencils; deodorants; eye cream, gels, makeup and shadow; eyebrow pencils; eyeliners; hair gel and spray; blusher; tooth paste; lip gloss; lipstick; makeup; cologne; mascara; nail polish and glitter; candy; breakfast cereal; chewing gum; fruit pies; bubble gum; ready to eat cereal-derived food bars; prerecorded audio and video cassettes, compact discs, video discs, records, and CD-ROMs, all of the foregoing featuring talent shows; video game machine that is adapted or intended or use with a television, monitor or some other form of display apparatus which is separate from the video game machine; computer game equipment containing memory devices, namely, discs; interactive video game programs; magnets; interactive computer game software downloaded from a global computer network; sunglasses; soft drinks.

These federal trademark registrations are valid, subsisting, and in full force under Section 15 of the United States Trademark Act of 1946, as amended, 15 U.S.C. § 1065, and FremantleMedia is the exclusive owner of these trademark registrations and all of the related business and goodwill throughout the United States.

24.    In recognition of FremantleMedia's exclusive ownership of, and rights in, the AMERICAN IDOL word mark, the United States Trademark Office has also granted FremantleMedia several federal trademark registrations for that mark, including the following:

(a)    U.S. Trademark Reg. No. 2,751,431 for the mark **AMERICAN IDOL** (issued August 12, 2003) for entertainment services in the nature of a continuing television talent show.

(b)    U.S. Trademark Reg. No. 2,863,808 for the mark **AMERICAN IDOL** (issued June 13, 2004) for cosmetics.

(c)     U.S. Trademark Reg. No. 2,951,733 for the mark **AMERICAN IDOL** (issued May 17, 2005) for entertainment services in the nature of sweepstakes.

(d)     U.S. Trademark Reg. No. 2,959,920 for the mark **AMERICAN IDOL** (issued June 7, 2005) for backpacks and shoulder bags.

(e)     U.S. Trademark Reg. No. 3,037,638 for the mark **AMERICAN IDOL** (issued January 3, 2006) for wireless telephone services and digital cameras.

(f)     U.S. Trademark Reg. No. 3,064,528 for the mark **AMERICAN IDOL** (issued February 28, 2006) for Halloween and masquerade costumes.

(g)     U.S. Trademark Reg. No. 3,204,113 for the mark **AMERICAN IDOL** (issued January 1, 2007) for portable karaoke player and recorder featuring video recorder, monitor and microphone; karaoke player and recorder featuring monitor and microphone.

(h)     U.S. Trademark Reg. No. 3,257,662 for the mark **AMERICAN IDOL** (issued July 3, 2007) for Coin-operated amusement machines.

(i)     U.S. Trademark Reg. No. 3,114,786 for the mark **AMERICAN IDOL** (issued July 11, 2006) for oft drinks.

(j)     U.S. Trademark Reg. No. 3,181,455 for the mark **AMERICAN IDOL** (issued May 12, 2006) for after-shave lotions;  body cream and sprays; cosmetics; cosmetic pencils; cosmetics namely, compacts; deodorants; eye cream, gels, makeup, pencils and shadow; eyeliners; makeup; hair gel; hair spray; blusher; tooth paste; lip gloss; lipstick; cologne; mascara; nail polish and glitter.

(k)     U.S. Trademark Reg. No. 3,101,422 for the mark **AMERICAN IDOL** (issued June 6, 2006) for (in addition to the goods noted in paragraph 22, above) prerecorded audio and video cassettes, compact discs, video discs, records, and CD-ROMs, all of the foregoing featuring talent shows; video game machine that is adapted or intended for use with a television, monitor or some other form of display apparatus which is separate from the video game machine; computer game equipment containing memory devices, namely, discs; interactive video game programs; [electronically or magnetically activated pre-paid telephone debit cards;] magnets; interactive computer game software downloaded from a global computer network; eyeglasses and sunglasses; [gaming machines; gaming equipment, namely, slot machines with or without video output]; Posters, calendars, notebooks, binders, daily organizers, memopads, stickers, [comic books,] writing paper, envelopes, greeting cards, paper coasters, paper mats, [newspapers for general circulation], books and magazines in the field of talent shows, photographs, postcards, trading cards, [cardboard stand-up   cutouts featuring photographs or artwork,] prepaid phone debit cards without magnetic

coding,[ trading card milk bottle caps, and personal checks]; [Target games] board games and card games, playing cards,[kites, toy action figures, disc-type toss toys, bows and arrows, balls of all kinds,] dolls, doll playsets,[ plush toys,] toy vehicles, toy cars,[ toy trucks, toy bucket and shovel sets, roller skates, toy model hobbycraft kits, toy rockets, toy guns, toy holsters], musical toys,[ jigsaw puzzles, badminton sets, bubble making wands and solution sets,] toy figurines, [toy banks, puppets,] toy balloons, [yo-yos, skateboards, toy scooters, face masks, stand alone video game machines, LCD game machines, hand held unit for playing electronic games, but specifically excluding dice games and computer software games].

These federal trademark registrations are valid, subsisting, and in full force under Section 15 of the United States Trademark Act of 1946, as amended, 15 U.S.C. § 1065, and FremantleMedia is the exclusive owner of each of its trademark registrations, the marks shown therein, and all of the related business and goodwill throughout the United States.

25.    The AMERICAN IDOL Trademarks include, and FremantleMedia uses in commerce and licenses for use on a number of different products and services, compound marks that incorporate the dominant semantic element "Idol" (the "Idol Marks"), which also link the authorized goods and services in a consistent, easy to recognize fashion.

26.    Examples of Idol Marks include the name of its viewer affinity program, "My Idol," the sections of the Official AMERICAN IDOL Websites labeled "Fashion Idol," "Idol Style" "Idol Camp," and "Idol Gives Back," and FremantleMedia's licensed website "Idol Underground".

27.    The AMERICAN IDOL Trademarks and the AMERICAN IDOL Trade Dress are all inherently distinctive and have acquired immense secondary meaning in the marketplace, as a result of the millions of dollars spent to promote AMERICAN IDOL and as evidenced by the fact that more than 30 million viewers on average, and for the later stages of the competition, upwards of 40 million viewers, watch each episode of AMERICAN IDOL.

28.    By their nature, and as a result of such promotional activities, FremantleMedia

owns exclusive statutory and common law rights in the entire family of registered and unregistered AMERICAN IDOL Trademarks, those marks have become one of the most famous families of trademarks and services marks, and the AMERICAN IDOL Trade Dress one of the most well known trade dress, in the United States.

29.     The AMERICAN IDOL Trademarks are immediately and universally recognizable by the public as the brand indicator of, and indelibly associated in the minds of the public with, the AMERICAN IDOL television program and the best means for identifying authorized products and services that emanate exclusively from, or are licensed or sponsored by FremantleMedia, and as distinguishing the actual AMERICAN IDOL television program and licensed products and services, from unauthorized, infringing uses.

30.     The AMERICAN IDOL Trademarks and AMERICAN IDOL Trade Dress represent goodwill of enormous value to FremantleMedia, and are among FremantleMedia's most valuable business assets.

### *The Defendants Sell Infringing "Adorable Idol" T-shirts*

31.     The Adorable Idol Shirts have all of the indicia of Fremantle-licensed merchandise—the Infringing Logo, including its use of colors and scripted font that are identical to the AMERICAN IDOL Trade Dress primary brand colors and scripted font, directly mimics the AMERICAN IDOL Logo and creates the clear impression that such shirts originated from an authorized source, or were at least manufactured under authority or license granted by the trademark owner.

32.     The Adorable Idol shirt imitates authorized, licensed products in such a striking manner that, upon information and belief, such imitation was willfully undertaken by the Defendants to appropriate the goodwill of the AMERICAN IDOL Trademarks.

33.    Upon information and belief, the Adorable Idol Shirts were first available for purchase in early 2007, as part of AG's "Spring Collection."

34.    Despite having no authority or license from Fremantle, upon information and belief the Defendants sold to, at wholesale, or otherwise caused the Adorable Idol Shirts to be sold at, major retail stores located in the State of California, such as Bloomingdales, and in the State of New York, such as Bloomingdales, Lord & Taylor, Nordstrom, and Denny's Children Wear.

35.    Despite having no license or authority from Fremantle, upon information and belief AG also sold to, at wholesale, or otherwise caused the Adorable Idol Shirts to be sold on, several websites including Amazon.com, Bel-Bambini.com, JenniferKaufman.com, Pandapark.com and Shop-serendipity.com as well as through the AG Website.

36.    Despite having no license or authority from Fremantle, upon information and belief Rose Garden sold to, at wholesale, or otherwise distributed, the Adorable Idol Shirts to major department stores, boutiques and other retailers in the New York tri-state area on behalf of AG.

### *The Defendants Persist Selling Despite Fremantle Demands to Stop*

37.    In March, 2007, FremantleMedia learned that the Infringing Shirts were available for sale at www.babesta.com and in a letter to the administrative contact for that site on or about March 19, 2007, FremantleMedia demanded that AG cease and desist from its infringing activities. In fact, a lawyer purporting to represent AG told one of FremantleMedia's lawyers by phone that she would look into the issue and call him back, but she never did and the infringing activities continued.

38.    On July 31, 2007, FremantleMedia learned that AG was still infringing its

valuable AMERICAN IDOL Trademarks, when the Infringing Shirts were discovered available for sale at a Bloomingdales store in Sherman Oaks, California.  FremantleMedia sent a letter directly to AG demanding that all use of FremantleMedia intellectual property, including the AMERICAN IDOL Trademarks, cease and desist immediately, but again, upon information and belief, the infringing activities continued.

39.     Because the Defendants copied the AMERICAN IDOL Trademarks and AMERICAN IDOL trade dress as blatantly as they did, upon information and belief the harm to FremantleMedia was particularly strong, given the strong likelihood that commercial and consumer purchasers of the Infringing Shirts were deceived into thinking that those shirts were connected in some fashion to AMERICAN IDOL.

**COUNT I**
**INFRINGEMENT OF FEDERALLY REGISTERED AMERICAN IDOL WORD MARKS**
**UNDER SECTION 32 OF THE UNITED STATES TRADEMARK ACT OF 1946**

40.     FremantleMedia repeats and realleges the allegations of paragraph 1 through 39 hereof, as if fully set forth herein.

41.     The famous, registered AMERICAN IDOL Word Marks are fanciful, and therefore inherently distinctive, and, as described above, FremantleMedia has made continual use of those marks in interstate commerce as a designation of the origin and quality of its, and its authorized licensees', products and services.

42.     The Defendants' use and imitation of the AMERICAN IDOL Word Marks is likely to cause confusion, mistake or deception in the minds of consumers and potential consumers as to the origin, source, sponsorship and quality of FremantleMedia's, and its authorized licensees', products and services and has thereby infringed, and continues to infringe, the AMERICAN IDOL Word Marks in violation of 15 U.S.C. § 1114.

43.     The Defendants' acts also constitute, upon information and belief, an attempt to trade on the goodwill which FremantleMedia has developed in connection with the AMERICAN IDOL Word Marks, to the detriment of FremantleMedia.

44.     At the time that the Defendants' began to use the AMERICAN IDOL Word Marks, upon information and belief the Defendants' had sufficient knowledge that such marks were famous and that the owner thereof would claim exclusive rights therein and consider the Defendants' Adorable Idol Shirts infringing, and therefore, the Defendants use of the AMERICAN IDOL Word Marks has been deliberate and willful.

45.     The aforesaid acts of the Defendants have caused and, unless restrained by the Court, will continue to cause, great and irreparable injury to FremantleMedia.

46.     FremantleMedia has no adequate remedy at law.

### COUNT II
### INFRINGEMENT OF FEDERALLY REGISTERED AMERICAN IDOL LOGOS UNDER SECTION 32 OF THE UNITED STATES TRADEMARK ACT OF 1946

47.     FremantleMedia repeats and realleges the allegations of paragraph 1 through 46 hereof, as if fully set forth herein.

48.     The registered AMERICAN IDOL Logo Trademarks are distinctive, and, as described above, FremantleMedia has made continual use of the AMERICAN IDOL Logo Trademarks in interstate commerce as a designation of the origin and quality of its and its licensees' products and services.

49.     The Infringing Logo, and the use thereof by the Defendants constitutes use and imitation of FremantleMedia's AMERICAN IDOL Logo in commerce that is likely to cause confusion, mistake or deception in the minds of consumers and potential consumers as to the origin, source, sponsorship and quality of FremantleMedia's, and its authorized licensees',

products and services, and has thereby infringed and continues to infringe, the registered AMERICAN IDOL Logo Trademarks in violation of 15 U.S.C. § 1114.

50.     The Defendants' acts also constitute, upon information and belief, an attempt to trade on the goodwill which FremantleMedia has developed in connection with the AMERICAN IDOL Logo Trademarks, to the detriment of FremantleMedia.

51.     At the time that the Defendants began to use the AMERICAN IDOL Logo Trademarks, upon information and belief the Defendants' had sufficient knowledge that such marks were famous and that the owner thereof would claim exclusive rights therein and consider the Defendants' Adorable Idol Shirts infringing, and therefore, the Defendants use of the AMERICAN IDOL Logo Trademarks on the Infringing Shirts was deliberate and willful.

52.     The aforesaid acts of the Defendants have caused and, unless restrained by the Court, will continue to cause, great and irreparable injury to FremantleMedia.

53.     FremantleMedia has no adequate remedy at law.

## COUNT III
### FALSE DESIGNATIONS OF ORIGIN AND FALSE DESCRIPTIONS AND REPRESENTATIONS UNDER SECTION 43(A) OF THE UNITED STATES TRADEMARK ACT OF 1946

54.     FremantleMedia repeats and realleges the allegations of paragraphs 1 through 53 hereof, as if fully set forth herein.

55.     FremantleMedia is the owner of the family of AMERICAN IDOL Trademarks, including the Idol Marks and the AMERICAN IDOL Trade Dress as described above.

56.     FremantleMedia has made continual use of such family of trademarks and such trade dress in interstate commerce as a designation of the origin and quality of its services.

57.     As described above, the Defendants' infringing conduct, sale and distribution of the Adorable Idol Shirts will engender consumer confusion with regard to its AMERICAN IDOL

Trademarks and AMERICAN IDOL Trade Dress and presents a continuing threat to members of the public in that the public is likely to be confused, mistaken or deceived as to the origin and quality of FremantleMedia's or the Defendants' goods or services and has thereby infringed, and continues to infringe, such marks in violation of 15 U.S.C. § 1125(a).

58.    The Defendants' actions are also likely to cause confusion or mistake among the relevant consumers and the trade as to the true origin, source, sponsorship or affiliation of the Defendants' products or services and constitute willful use of false designations of origin, false descriptions and representations, false advertising, and federal unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

59.    At the time that the Defendants used the family of AMERICAN IDOL Trademarks and AMERICAN IDOL Trade Dress, the Defendants had actual knowledge that FremantleMedia considered the Adorable Idol Shirts to be infringing, and therefore, the Defendants' use of FremantleMedia's family of AMERICAN IDOL Trademarks has been deliberate and willful.

60.    Upon information and belief, the Defendants' conduct has resulted in substantial illicit profits for the Defendants.  The Defendants' conduct has also resulted in damages to FremantleMedia caused by diversion of sales to the Defendants, lost sales, and other damages resulting from irreparable harm to FremantleMedia's goodwill.  The amount of these damages cannot be ascertained at the present time.

61.    The aforesaid acts of the Defendants' have caused and, unless restrained by this Court, will continue to cause, great and irreparable injury to FremantleMedia.

62.    FremantleMedia has no adequate remedy at law.

## COUNT IV
### TRADEMARK DILUTION UNDER 15 U.S.C. § 1125(c)

63.     FremantleMedia repeats and realleges the allegations contained in paragraphs 1 through 62 above, as though fully set forth herein.

64.     Upon information and belief, the Defendants' aforesaid activities, particularly its commercial use in commerce of the famous and distinctive AMERICAN IDOL Trademarks on its Adorable Idol Shirts, which began after the AMERICAN IDOL Trademarks were famous, upon information and belief caused the dilution of the distinctive quality of, and tremendous goodwill associated with, those trademarks in violation of 15 USC § 1125(c).

65.     The aforesaid acts of the Defendants' have caused and, unless restrained by this court, will continue to cause great and irreparable injury to FremantleMedia.

66.     FremantleMedia has no adequate remedy at law.

**COUNT V**
**COMMON LAW UNFAIR COMPETITION**

67.     FremantleMedia repeats and realleges the allegations contained in paragraphs 1 through 66 above, as though fully set forth herein.

68.     The Defendants' aforesaid activities constitute deliberate passing off, unfair competition, misappropriation, unjust enrichment, unfair and fraudulent business practices, and misuse of FremantleMedia's family of AMERICAN IDOL Trademarks, under the common law of the State of New York.

69.     The aforesaid acts of the Defendants' have caused and, unless restrained by this Court, will continue to cause, great and irreparable injury to FremantleMedia.

70.     FremantleMedia has no adequate remedy at law.

**COUNT VI**
**INJURY TO BUSINESS REPUTATION AND DILUTION**
**OF TRADEMARKS UNDER N.Y. GEN. BUS. LAW 360-l**

71.     FremantleMedia repeats and realleges the allegations contained in paragraphs 1

through 70 above, as though fully set forth herein.

72.    The Defendants' aforesaid activities have created the likelihood of injury to the business reputation of FremantleMedia and dilution of the distinctive quality of its famous AMERICAN IDOL Trademarks.

73.    Such likelihood of injury exists regardless of whether or not the Defendants, their activities or the Adorable Idol Shirts compete with or cause confusion between such and FremantleMedia, its activities, or its AMERICAN IDOL apparel.

74.    The aforesaid acts of the Defendants' have caused and, unless restrained by this Court pursuant to New York General Business Law 360-l, will continue to cause great and irreparable injury to FremantleMedia.

**COUNT VII**
**DECEPTIVE ACTS AND PRACTICES**
**UNDER N.Y. GEN. BUS. LAW 349**

75.    FremantleMedia repeats and realleges the allegations contained in paragraphs 1 through 74 above, as though fully set forth herein.

76.    The Defendants' aforesaid activities constitute knowing and willful deceptive trade practices in the conduct of their business that are prohibited by N.Y. Gen. Bus. Law Section 349.

77.    The aforesaid acts of the Defendants' have caused and, unless restrained by this Court, will continue to cause, great and irreparable injury to FremantleMedia.

78.    FremantleMedia has no adequate remedy at law.

**PRAYER FOR RELIEF**

**WHEREFORE, Plaintiff FremantleMedia North America, Inc. prays for judgment against Defendants' Marine M. Goss d/b/a Angelic Genius and Roseanne Yarusi d/b/a The**

**Rose Garden, and asks this Court to enter judgment in its favor on all counts and as follows:**

1.    That the Defendants' aforesaid activities constitute:

(a)    willful infringement of the federally registered AMERICAN IDOL Word Marks and AMERICAN IDOL Logo Trademarkss under 15 U.S.C. § 1114.

(b)    willful infringement and unfair competition with respect to the AMERICAN IDOL Trademarks and AMERICAN IDOL Trade Dress under 15 U.S.C. § 1125(a);

(c)    willful dilution of the AMERICAN IDOL Trademarks under 15 U.S.C. § 1125(c);

(d)    willful common law unfair competition;

(e)    willful dilution and injury to FremantleMedia's business reputation under New York G.B.L. § 360-1; and

(f)    deceptive acts and practices under New York G.B.L. § 349.

2.    That the Court grant temporary, preliminary and permanent injunctive relief enjoining the Defendants, their principals, shareholders, officers, directors, employees, successors, assigns, suppliers, agents, servants and attorneys, and all those persons in active concert, participation or privity with them, or any of them, from:

(a)    using, for or in connection with the operation of any business, or the manufacture, distribution, advertising, promotion, offering for sale or sale of any product other than products that FremantleMedia has authorized the sale of, any AMERICAN IDOL Trademarks, the AMERICAN IDOL Trade Dress, or any mark, symbol, name, device, or trade dress that is likely to cause confusion, mistake, or deception;

(b)    using any false designation of origin or description which can or is likely to lead the trade or public, or individual members thereof, to mistakenly believe that any product or

service advertised, promoted, offered or sold by the Defendants is sponsored, endorsed, connected with, approved, or authorized by FremantleMedia;

(c)     causing likelihood of confusion or injury to FremantleMedia's business reputation and to the distinctiveness of the AMERICAN IDOL Trademarks and AMERICAN IDOL Trade Dress, by unauthorized use of the same;

(d)     engaging in any other activity constituting unfair competition or infringement of the AMERICAN IDOL Trademarks or the AMERICAN IDOL Trade Dress, or FremantleMedia's rights in or to use, or to exploit, the same;

(e)     representing, advertising or promoting, through any means, any false or misleading impression, representation or description that state, or suggest, that the Defendants or any of their activities are authorized, sponsored, endorsed or approved by, or otherwise affiliated with, FremantleMedia; and

(f)     doing any other act or thing calculated or likely to cause confusion or mistake among the trade or the public, or to deceive purchasers into the mistaken belief that the Defendants' products or services emanate from, are affiliated with, sponsored or approved by, the same source as goods of FremantleMedia, or to misrepresent the nature, characteristics, or qualities of the Defendants' products or services, or the activities of the Defendants' or FremantleMedia.

3.     That the Court issue an order:

(a)     requiring the Defendants and any of their principals, officers, agents, servants, employees, attorneys, successors, and assigns, and all those in active privity or concert with the Defendants who receive actual notice of said order in any judicial district, to cease and desist from using the AMERICAN IDOL Trademarks, AMERICAN IDOL Trade Dress or any

unauthorized simulations, copies or colorable imitations of such marks, and to deliver to FremantleMedia for destruction all infringing merchandise in their possession or under their control which bears any such mark or unauthorized simulations, copies or colorable imitations thereof; and

(b)    requiring the Defendants to file with the Court and serve upon FremantleMedia within 30 days after service upon the Defendants of the Court's injunction issued in this action, a written report, signed under oath, setting forth in detail the manner in which the Defendants have complied with such injunction.

4.    FremantleMedia be awarded monetary relief in an amount to be fixed by the Court in its discretion as just, including all damages sustained by FremantleMedia, including FremantleMedia's lost profits and/or all of the Defendants' profits or gains of any kind resulting from its willful trademark and trade dress infringement, said amount to be trebled, and exemplary damages in view of the intentional nature of the acts complained of herein pursuant to 15 U.S.C. § 1117.

5.    That the Court order an accounting and render judgment against the Defendants for all profits wrongfully derived by the Defendants by reason of their trademark infringement, false designation of origin, trade dress infringement, and unfair competition.

6.    FremantleMedia be awarded punitive damages under New York common law due to the willful and wanton nature of the Defendants' actions.

7.    FremantleMedia be awarded corrective advertising funds to purge the effects of the Defendants' improper and unlawful acts.

8.    FremantleMedia be awarded its attorneys' fees, due to the exceptional nature of this case, and all of FremantleMedia's costs and expenses of litigation, as well as pre-judgment

interest, pursuant to 15 U.S.C. §§ 1117(a) and 1117(b).

9.    FremantleMedia be awarded such other and further equitable relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

FremantleMedia demands a trial by jury trial on all issues so triable.

Dated: New York, New York
      August 24, 2007

                LOEB & LOEB LLP

By:_____
          Thomas A. Guida (TG-3600)
          Barry I. Slotnick (BS-9796)
          345 Park Avenue
          New York, New York 10154-1895
          (212) 407-4000

          Attorneys for Plaintiff
          FREMANTLEMEDIA
          NORTH AMERICA, INC.

# EXHIBIT A



# EXHIBIT B


